IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 1:23-cr-14-AW-MAL

JOSEPH A. VALDEZ,
    Defendant.
_____/

## **GOVERNMENT'S SENTENCING MEMORANDUM[1]**

In the modern era, one of the most common nightmares people experience is being naked in public. For college students K.M., L.R., and S.U., Defendant Joseph Valdez brought that nightmare to life. Using phishing[2] tactics, Valdez tricked K.M., L.R., and S.U. into providing verification codes to their Snapchat accounts so he could reset their passwords. Once inside their accounts, Valdez stole the victims' private, nude photographs. But Valdez didn't stop there. Armed with K.M., L.R., and S.U.'s most sensitive and intimate images, he set out to taunt and harass them with the stolen photographs. As a law enforcement investigation would later reveal, Valdez's theft and harassment of K.M., L.R., and S.U. was only

---

[1] An unredacted version of this document is being filed under seal because it quotes the presentence report.

[2] "Phishing is a type of online scam that targets consumers by sending them an e-mail [or text message] that appears to be from a well-known source – an internet service provider, a bank, or a mortgage company, for example. It asks the consumer to provide personal identifying information. Then a scammer uses the information to open new accounts, or invade the consumer's existing accounts." Phishing Scams, FTC.GOV, https://www.ftc.gov/news-events/topics/identity-theft/phishing-scams (last accessed January 31, 2024).

1

a sliver of his conduct. To date, law enforcement has identified 15 other women who were similarly victimized or whose private, nude images were stolen and possessed by Valdez. To make matters worse, Valdez actively participated in an online group that glorified this conduct.

Valdez has pleaded guilty to wire fraud (Count One), aggravated identity theft (Count Six), and [cyber]stalking (Count Nine). For the reasons explained in this memorandum, the § 3553(a) factors warrant a sentence above the Guidelines range.

## I. APPLICATION OF § 3553(a) FACTORS TO VALDEZ

The Presentence Investigation Report ("PSR"), ECF No. 30, and the Statement of Facts ("SOF"), ECF No. 27, set out the details of Valdez's crimes. This Court may rely on the Statement of Facts and the undisputed facts in the PSR to impose its sentence. *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Government concurs with the Guidelines range stated in the presentence report.

This Court is obligated to impose a sentence that is "sufficient, but not greater than necessary," to comply with the sentencing purposes enumerated in § 3553(a). These purposes include retribution ("to reflect the seriousness of the

offense, promote respect for the law, and to provide just punishment"), deterrence ("to afford adequate deterrence to criminal conduct"), incapacitation ("to protect the public from further crimes"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment."). *See* 18 U.S.C. § 3553(a)(2). This Court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range and any pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. *Id.* at § 3553(a)(1), (3)-(7). After the Court calculates a defendant's advisory guideline range, it "may impose a more severe or more lenient sentence as long as the sentence is reasonable" in light of the § 3553(a) factors. *United States v. Williams*, 435 F.3d 1350, 1353 (11th Cir. 2006) (quoting *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005)).

Here, the nature and seriousness of Valdez's offenses, the need to promote respect for the law and provide just punishment, and the need for both specific and general deterrence all weigh in favor of a sentence above the Guidelines range.

### A. THE EGREGIOUSNESS OF VALDEZ'S CONDUCT WARRANTS AN UPWARD VARIANCE

As the PSR and Statement of Facts lay out in detail, Valdez used publicly available information and social media platforms to identify and obtain the phone numbers of young adult women throughout the United States. Valdez then set out

3

to access the victims' Snapchat accounts where they stored their private, nude photographs. To trick his victims into handing over account access, Valdez reset the victims' Snapchat passwords by inputting the victims' phone numbers into the "Reset Password" feature. This prompted Snapchat to send a verification code via text and email. Almost simultaneously, Valdez sent text messages to the victims in which he posed as Snapchat's Privacy Center. The messages described "suspicious" account activity and requested that the victims confirm their identity by providing the verification code or else risk having their accounts locked. When the victims responded with the verification code, Valdez used the code to reset the account password and infiltrate the account. Once inside the account, Valdez downloaded the victims' private photographs, including nude photographs and photographs depicting the victims engaged in sexual acts.

But that violation of privacy wasn't enough for Valdez. He then used the stolen photographs to taunt and harass his victims, causing significant emotional distress. For example, Valdez sent K.M. explicit photographs of herself, made crude comments about her body to her, and threatened to share the photographs with others, including her parents. SOF at pg. 6; ███████. ███████████████████████████████████████ ███████████████████████████████ ███████████████████████████████████ To S.U., Valdez sent a nude

4

photograph of herself accompanied by a crude sexual comment about her body. SOF at pg. 10; ███████. At the time of these messages, K.M., L.R., and S.U. were college students who had no idea who was taunting them with their stolen, private images. They had no way of knowing whether it was a friend, a classmate, or (as it turned out) a complete stranger. ████████████████████████

████████████████████████████████████████████████████████

████ And still, many other private, nude or sexually explicit images of young women were found in Valdez's electronic devices; however, the identities of these women remain unknown.

What's more, Valdez was active in online groups that celebrated this conduct. SOF at pg. 11; ████████. In these groups, Valdez and other like-minded individuals who had engaged in similar schemes would boast and trade explicit photographs of young women that they had stolen. *Id.* ████████████████

████████████████████████████████████

Unsurprisingly, Valdez's conduct caused his victims significant emotional harm. For example, K.K. endured such extreme anxiety that she ceased attending in-person college courses and enrolled in online courses. Other victims, like T.T., required months of therapy to cope with the emotional impact that Valdez caused. Such negative effects are consistent with the American Psychological

Association's (APA) presentation at its 119th Annual Convention. In that presentation, the APA reported that "[p]eople who are cyberstalked or harassed online experience higher levels of stress and trauma than people who are stalked or harassed in person." *Dealing with the Cyberworld's Dark Side*, APA.ORG, https://www.apa.org/news/press/releases/2011/08/cyberworld (last visited February 5, 2024). Other victims are so embarrassed that they don't want to be involved in this criminal case.

      This Court's sentence must account for Valdez's conduct as well as the harm suffered by his victims. "The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (en banc). Valdez deceived, violated, and then harassed these young women. He made them feel violated and vulnerable by taunting and threatening them with the stolen images. Without their consent, he put their bodies on display for the world to see. And because Valdez shared many of stolen photographs on the internet, the harm suffered by these young women will endure for much longer than the time Valdez serves in prison. *See id.* (noting that the defendant had effectively sentenced his child victims "to a lifetime of harm … because he uploaded [the child pornography he created] to the internet[.]").

Thus, the egregiousness of Valdez's conduct, the number of victims, and the resulting emotional harm call for a sentence above the guideline range.

### B. THE NEED FOR SPECIFIC AND GENERAL DETERRENCE FAVORS AN UPWARD VARIANCE

The need for a sentence in this case to specifically deter Valdez is significant. He did not commit his crimes due to a momentarily lapse in judgment or because of some relationship drama in his life. Despite having what appeared to have been a normal family life and a blossoming relationship with his (then) girlfriend/fiancé, Valdez engaged in an ongoing pattern of deceiving women and stealing their private, nude images for years. There is no evidence that Valdez made money from his crimes (*e.g.*, blackmailing his victims into paying him large sums of money in exchange for not publishing their nude images). Rather, Valdez appears to have committed his phishing scheme to obtain the nude images and harassed his victims to satisfy his perverted sexual interests. ███████████ ████████████████████████████████ ██████████

The seriousness of Valdez's offenses is exacerbated by another fact: at the time that he was victimizing the women, he had already done so at least two times (that had been reported and linked to him). ████████████ ████████████████████████████████████ ████████████████████████████████████

███████ This demonstrates the need for a sentence that will specifically deter Valdez from engaging in future crimes and victimizing more women.

And it is not just Valdez who needs to be deterred. "Phishing is on the rise, and anyone who uses email, text messaging, and other forms of communication is a potential victim." *Phishing Attacks are Increasing and Getting More Sophisticated,* CNBC.COM, https://www.cnbc.com/2023/01/07/phishing-attacks-are-increasing-and-getting-more-sophisticated.html (last accessed February 8, 2024). In 2022, there were over 300,000 phishing complaints made to the FBI in the United States. *Internet Crime Report 2022,* pg. 21, FEDERAL BUREAU OF INVESTIGATION, https://www.ic3.gov/Media/PDF/AnnualReport/2022_IC3Report.pdf (last accessed February 8, 2024). And there were over 11,000 reported victims of cyberstalking. *Id.* Valdez participated in an online group to communicate with other like-minded individuals about leaked private and nude photos and videos that were unlawfully obtained from users of Snapchat. SOF at pgs. 2 & 11; ███████ This shows that there is a market for such stolen digital content, and that there are others who engage in phishing schemes like the one used by Valdez. Accordingly, there is a strong need to impose a severe sentence

that will serve as a warning to other individuals who considering, or are otherwise engaged in, similar criminal conduct.

As the Eleventh Circuit has explained, "general deterrence is a critical factor that must be considered and should play a role in sentencing defendants." *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022). And the need for general deterrence is especially important in white collar cases (such as Valdez's phishing scheme). "The reason is that 'economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity,' which makes them 'prime candidates for general deterrence." *Id.* (quoting *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013)). *See also United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (recognizing that "the Congress that adopted the § 3553(a) sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals, even where those criminals might themselves be unlikely to commit another offense").

A sentence that represents an upward variance from the Guidelines would send the message to others that defrauding women through a phishing scheme in order to steal their nude images will result in significant deprivation of liberty, and not merely a proverbial "slap on the wrist." In fashioning a reasonable sentence, this Court should be mindful that "[l]eniency undermines general deterrence[.]" *Howard*, 28 F.4th at 209.

## C. THE GUIDELINES RANGE FAILS TO ACCOUNT FOR SEVERAL AGGRAVATED CIRCUMSTANCES

Valdez's crimes went beyond just mere stalking and involved a large degree of fraud. Yet, the applicable Guidelines for this case—found in U.S.S.G. § 2A6.2 (Stalking or Domestic Violence)—don't fully account for his conduct.

For instance, the specific offense characteristics listed in § 2A6.2 do not take into consideration any of Valdez's deceptive and fraudulent conduct used to obtain access to the Snapchat accounts of the young women who he victimized. Similarly, the number of young women who Valdez victimized is not accounted for by the applicable Guidelines. *Cf.* U.S.S.G. § 2B1.1(b)(2). Nor do the applicable Guidelines account for the sophisticated means that Valdez used to execute his phishing scheme upon his victims. *Cf.* U.S.S.G. § 2B1.1(b)(10)(C). For example, Valdez use of different VoIP telephone numbers to contact and deceive his victims. *See, e.g.,* SOF at pgs. 4, 6, 8-9.

The Guidelines range reflected in the PSR also underrepresents Valdez's prior criminal conduct. ▮▮▮▮▮▮ As discussed above, this case wasn't the first time that Valdez used a phishing scheme to obtain nude photographs of young women. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████

████████████████████████████

Not only were his prior offenses not calculated into his Guidelines range, Valdez was also granted an additional two-level reduction because he meets the criteria of a "Zero-Point Offender." ████████ However, district courts may vary upwards where the Guidelines underrepresent the seriousness of a defendant's criminal history. *See United States v. Rodriguez-Reyes*, 925 F.3d 558, 568 (1st Cir. 2019) ("It is clear that, as part of the 18 U.S.C. § 3553(a)(1) inquiry, a sentencing judge may consider whether a defendant's criminal history score substantially underrepresents the gravity of his past conduct.") (cleaned up). Here, the Guidelines underrepresent Valdez's actual criminal history; thus, an upward variance is appropriate to fully account for his prior criminal conduct.

### D. THE NEED TO AVOID SENTENCING DISPARITIES MILITATES IN FAVOR OF AN UPWARD VARIANCE

Courts should avoid unwarranted sentencing disparities in determining an appropriate sentence. In other cases involving theft of nude images and cyberstalking, courts have imposed lengthy prison sentences. The sentences meted in the following cases demonstrate that a significant prison sentence for Valdez's crimes is necessary to accomplish the goals of 18 U.S.C. § 3553(a). As noted below, in some cases, district courts have found the recommended Guidelines range to be appropriate and, in other cases, varied upward.

For example, a 35-year-old man was sentenced to 15 years in federal prison for cyberstalking and "sextorting" multiple victims. https://www.justice.gov/usao-mdfl/pr/new-york-man-sentenced-15-years-federal-prison-cyberstalking-and-sextortion; *see also* "*Ignored by Police, Twin Sisters Took Down Their Cyberstalker Themselves,*" THE WASHINGTON POST, https://www.washingtonpost.com/technology/2023/08/26/revenge-porn-leaked-nudes-police (last accessed February 5, 2024).

In another case, a hacker was sentenced to 10 years in federal prison for breaking into the personal online accounts of multiple women—including some well-known celebrities—and posting revealing photos on the internet. "*Christopher Chaney, So-called Hollywood Hacker, Gets 10 Years for Posting Celebrities' Personal Photos Online,*" CBS NEWS, https://www.cbsnews.com/news/christopher-chaney-so-called-hollywood-hacker-gets-10-years-for-posting-celebrities-personal-photos-online (last accessed February 5, 2024).

Recently, a man in Pennsylvania was sentenced to 18 months in federal prison for engaging in a phishing scheme to trick women into providing a verification code needed to reset their Snapchat account passwords so he could access private sections of their accounts and steal their nude photos. https://www.justice.gov/usao-mdpa/pr/pottsville-man-sentenced-18-months-imprisonment-hacking-snapchat-accounts-dozens. That defendant was only

charged—by information—with unlawfully accessing protected computers (which carries a statutory maximum penalty of five years imprisonment) and was not charged with cyberstalking or aggravated identity theft like Valdez. But the prosecution in that case sought only *some* imprisonment.

In 2013, a man who hacked into the online accounts of women by resetting their passwords and stealing their nude photographs from those accounts was sentenced to 60 months in federal prison. https://www.justice.gov/usao-cdca/pr/glendale-man-who-admitted-hacking-hundreds-computers-sextortion-case-sentenced-five.

### E.  VALDEZ'S PERSONAL CHARACTERISTICS DO NOT OUTWEIGH THE SIGNIFICANT AGGRAVATORS PRESENT

Valdez's family life and upbringing are set forth in the PSR. ▇▇▇▇▇ ▇▇ Valdez's academic and professional accomplishments are commendable. However, the guidelines "authorize no special sentencing discounts on account of economic or social status." *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013). Moreover, Valdez's ongoing phishing scheme, coupled with his taunting and harassment of the victims after he executed his scheme, all while engaged to be married (and even after being newly married), represent a betrayal of his now-wife's trust. In other words, every defendant could be considered "a good person" if his or her past criminal conduct is ignored. *See, e.g., Irey*, 612 F.3d at 1203 ("By…assuming away or putting out of mind all the criminal acts that they

13

have committed, one may describe many, if not most, criminals as good people[.]")
And even assuming that Valdez is a good person—though the facts of this case suggest otherwise—"good people can make bad decisions and they're still held accountable for their conduct." *United States v. Vaughan*, 525 F. App'x 871, 877 (10th Cir. 2013).

## II. CONCLUSION

A Guideline sentence would not achieve the purposes of 18 U.S.C. § 3553(a). Rather, an upward variance is more appropriate. Valdez's victims will never know how many people around the world possess their private, nude images like one collects baseball cards, nor can they fully recoup these compromising images from the hands of those who possess them for prurient purposes. However, a lengthy prison sentence will help Valdez's victims achieve closure and feel that justice was served. And it will help protect the community from Valdez and others who commit such an invasive intrusion of privacy. Valdez's ongoing phishing scheme to deceive young women—one that he continued to employ even after being interviewed by the police—demonstrates the need for a sentence which strongly promotes specific and general deterrence. So does Valdez's need for his victims to know that he infiltrated their Snapchat accounts and stole their very private images. Valdez's efforts to taunt and harass his victims evinces his desire for his victims to be emotionally distraught and to know that they were "had" by

14

him. For these reasons, the Government respectfully requests the imposition a sentence above the Guidelines range.

Respectfully submitted,

JASON R. COODY
United States Attorney

/s/ Justin M. Keen

JUSTIN M. KEEN
Assistant United States Attorney
Florida Bar Number: 021034
111 North Adams Street, Fourth Floor
Tallahassee, FL 32301
Justin.Keen@usdoj.gov
(850) 942-8430

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that this memorandum complies with the type-volume limitation of Local Rule 7.1(F) because this pleading contains approximately 3,305 words.

/s/ Justin M. Keen

JUSTIN M. KEEN
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via the Court's CM/ECF system on this 9th day of February, 2024, which will send notification of such filing to all counsel of record.

                                                  JUSTIN M. KEEN
                                                  Assistant United States Attorney